JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff Mercury Finance Co. ("Mercury") appeals from the order of the trial court that awarded Mercury damages plus interest at the statutory rate, rather than the interest rate set forth in the parties' contract, following the default of defendant Ronald Smith. For the reasons set forth below, we affirm.
 {¶ 2} On July 1, 2005, Mercury filed this action against Smith alleging that it was the assignee of a retail installment contract executed by Smith for the purchase of a car in December 1999. This document indicated that Smith had financed $10,531.84 at an annual interest rate of 23 per cent. Smith defaulted on the loan in March 2001, and Mercury sought the entire principal plus accrued interest, for a total balance of $21,536.68.
 {¶ 3} Smith failed to answer and Mercury was awarded judgment by default. Mercury submitted an Affidavit of Damages and Interest Calculator. According to these documents, defendant defaulted on the loan in March 2001 and owed $10,979.20 on the principal amount. Mercury also maintained that interest had begun to accrue from March 2001, and was due in the amount of $10,557.48.
 {¶ 4} There was no hearing as to damages and the trial court subsequently awarded Mercury $10,979.20 in damages. The court rejected Mercury's claim for an additional $10,557.48, based on 23 per cent interest rate set forth in the contract, and instead awarded Mercury interest at the statutory rate of 5 per cent, beginning in May 2005. Mercury now appeals, assigning the following interrelated errors for our review:
 {¶ 5} "The Court's decision was against the manifest weight of the evidence."
 {¶ 6} "The Court abused its discretion in rendering judgment in favor of plaintiff but disallowing an award of prejudgment interest accrued interest since the date of default."
 {¶ 7} "The Court erred by awarding default judgment with the post judgment rate of interest of Five Percent (5%) rather than the rate of interest stipulated in the contract."
 {¶ 8} With regard to procedure, we note that pursuant to Civ.R. 55, the averments of a plaintiff's complaint may be taken as true, the court is not required to automatically enter default judgment as requested by the plaintiff; the party moving the court for default judgment has to establish his claim for relief to the court's satisfaction. Mancino v. Third Fed. SL, (Oct. 28, 1999), Cuyahoga App. No. 75063.
 {¶ 9} Specifically, with regard to damages, Civ.R. 55(A) provides in relevant part as follows:
 {¶ 10} "* * * If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall when applicable accord a right of trial by jury to the parties."
 {¶ 11} Thus, a judge has discretion to require a party seeking default judgment to substantiate its claims with evidence prior to entering judgment. X-Technology v. MJ Techs., Cuyahoga App. No. 80126, 2002-Ohio-2259, citing Mancino v. Third FederalSavings Loan, supra.
 {¶ 12} With regard to prejudgment interest, we note that prejudgment interest "acts as compensation and serves ultimately to make the aggrieved party whole." Shanker v. ColumbusWarehouse Limited Partnership (June 6, 2000), Franklin App. No. 99AP-772; First Bank v. L.C., Ltd. (1999), Franklin App. No. 99AP-304. It is generally awarded as a matter of law on a contract claim. Id.; Dwyer Electric, Inc. v. ConfederatedBuilders, Inc. (Oct. 28, 1999), Crawford App. No. 3-98-18. The amount to be awarded is based on the court's factually determining the accrual date, or when the claim became "due and payable," and the interest rate. Id.
 {¶ 13} Generally, prejudgment interest begins to run a promissory note after the date of the first missed payment. SeeStar Bank Natl. Assn. v. Cirrocumulus Ltd. (1997),121 Ohio App. 3d 731, 749, 700 N.E.2d 918.
 {¶ 14} With regard to the rate of interest, R.C. 1343.03
provides:
 {¶ 15} "(A) In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, * * * the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract."
 {¶ 16} Similarly, R.C. 1343.02 provides:
 {¶ 17} "Upon all judgments, decrees, or orders, rendered on any bond, bill, note, or other instrument of writing containing stipulations for the payment of interest in accordance with section 1343.01 of the Revised Code, interest shall be computed until payment is made at the rate specified in such instrument."
 {¶ 18} See, also, Meck v. Burger, Cuyahoga App. No. 84848,2005-Ohio-2446.
 {¶ 19} Ohio courts have held that interest rates which exceed the statutory rate set forth in R.C. 1343.03 are allowed when provided for in the contract. Classic Funding v. Burgos,
Cuyahoga App. No. 80844, 2002-Ohio-6047; Ohio Sav. Bank v. RepcoElecs., Cuyahoga App. No. 73218. In order to be entitled to a rate different from the statutory rate of interest, two prerequisites must be satisfied: (1) there must be a written contract between the parties; and (2) the contract must provide a rate of interest with respect to money that becomes due and payable. P. W.F., Inc. v. C.S.U. Pizza, Inc. (1993),91 Ohio App.3d 724, 729, 633 N.E.2d 606; Yager Materials, Inc. v.Marietta Indus. Ent., Inc. (1996), 116 Ohio App.3d 233, 235-236,687 N.E.2d 505; Hobart Bros. Co. v. Welding Supply Serv., Inc.
(1985), 21 Ohio App.3d 142, 144, 486 N.E.2d 1229.
 {¶ 20} The Retail Installment Sales Act, R.C. 1317.01 et seq., provides additional limitations. Cf. Am. Fin. Servs.Assoc. v. City of Cleveland, 159 Ohio App.3d 489,2004-Ohio-6416, 824 N.E.2d 553.
 {¶ 21} R.C. 1317.08 provides:
 {¶ 22} "(A) (1) No retail installment contract that evidences an indebtedness greater than that allowed under sections 1317.06,1317.061 [1317.06.1], 1317.062 [1317.06.2], and 1317.07 of the Revised Code, and no retail installment contract in connection with which any charge prohibited by sections 1317.01 to 1317.11
of the Revised Code has been contracted for or received, shall be enforceable with respect to that excess indebtedness or charge against any retail buyer or any other person who as surety, indorser, guarantor, or otherwise is liable on the obligation created by any retail buyer on any retail installment contract."
 {¶ 23} R.C. 1317.06 in turn provides:
 {¶ 24} "(A) A retail seller at the time of making any retail installment sale may charge and contract for the payment of a finance charge by the retail buyer and collect and receive the same, which shall not exceed the greater of the following:
 {¶ 25} "(1) A base finance charge at the rate of eight dollars per one hundred dollars per year on the principal balance of the retail installment contract. * * *
 {¶ 26} "(2) A pre-computed base finance charge not in excess of the amount obtained by applying the rate of one and one-half per cent per month to the unpaid portion of the unpaid principal balance * * *."
 {¶ 27} R.C. 1317.061 sets forth an alternative interest rate "not exceeding an annual percentage rate of twenty-five per cent."
 {¶ 28} Under R.C. 2905.21(H) a rate exceeding 25 per cent annually is criminal usury. Thus where the rate is 24 per cent, the plaintiff may not seek interest on a compounding basis. SeeChampaign Landmark, Inc. v. McCullough (Nov. 27, 1990), Hardin App No. 6-89-17, 1990 (plaintiff exceeded the stated 24 percent annual rate where it added 2 percent service charge on unpaid balance including prior service charges); Minster Farmers Coop.Exch. Co. v. Meyer, Shelby App. No. 17-05-32, 2006-Ohio-1886.
 {¶ 29} Finally, we note that the damages awarded for a breach of contract should place the injured party in as good a position as it would have been but for the breach. Textron Fin. Corp. v.Nationwide Mut. Ins. (1996), 115 Ohio App.3d 137,684 N.E.2d 1261. A corollary of this legal principle is that a party generally should not recover a greater amount in damages for breach of an obligation than he could have gained by full performance thereof on both sides. Computer Sciences Corp. v.Owens-Illinois Corp. (April 18, 1975), Lucas App. No. 7778 .
 {¶ 30} In this matter, the trial court did not hold a hearing as to damages under Civ.R. 55(A). The parties have a written contract which clearly identifies the specified rate of interest, and this rate, 23 percent, is just below usury. The evidence further indicates that defendant stopped making payments in March of 2001, but no portion of the principal appears to be credited to defendant as the December 1999 principal amount was $10,531.84 and principal claimed due as of March 2001 was $10,979.20. Because the principal amount has grown from the contract date, despite one year of payments, it is conceivable that the usury bar may have been exceeded. In any event, we note that Mercury clearly stands to benefit far more from the breach of the contract than from its performance as the total payments listed in the Truth in Lending Disclosures indicates that defendant was to pay a total of $16,202 and Mercury is now seeking $21,536.68. Thus, although Mercury is claiming ascertainable liquidated damages, we cannot say that Mercury was automatically entitled to judgment in the amount requested following Smith's default of answering as nothing explains the amounts requested. See ClassicFunding v. Burgos, supra. In light of these issues, the trial court could properly conclude, within its discretion, that Mercury did not establish its claim for damages to the court's satisfaction. We therefore hold that the trial court did not abuse its discretion in disallowing the claimed contractual rate of prejudgment interest and instead awarding Mercury the post judgment rate of interest of five percent.
Affirmed.
It is, therefore, considered that said appellee recover of said appellant their costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J., and Kilbane, J., concur.